Allen, J.
That public bodies and public officers may be restrained by injunction from proceeding in violation of law, to the prejudice of the public or to the injury of individual rights, cannot be questioned. A usurpation of powers may by this process be prevented in a proper case, and a waste, misapplication or diversion of public property or trust funds be enjoined, and an alienation or renunciation of a public franchise be forbidden and restrained. To the extent that public officers and public bodies are trustees either of franchises or property for the benefit of the public, they are amenable to the jurisdiction of courts of equity in the administration of such trusts, at the suit of the people, if the people of the State at large are the cestuis gue trust, or of the *394 particular municipality interested, or of individuals having a special interest in the execution of the trust or in preventing the acts sought to be enjoined.
Ch. J. Ames, in Greene v. Mumford (5 R. I., 472), states the rule by which courts of equity are governed in the exercise of jurisdiction over public officers, whether acting individually or as members of a public board or body organized according to law. He says, “ certainly it is not the mere fact that a public officer is attempting to exercise a void authority which induces a court of equity to restrain him; but, notwithstanding he is a public officer, that he is about, by such exercise, to do an act which brings the case within its peculiar jurisdiction; for example, an act in breach of trust, in derogation of a contract which ought to be specifically performed, or an act of irreparable mischief to the real estate of another.” The learned judge is borne out in his statement as to this branch of equity jurisdiction, and its limitation, by the cases cited by him (Attorney-General v. Forbes, 2 M. & C., 123; Frewin v. Lewis, 4 id., 249; S. C., 9 Sim., 66); and it is believed that no well considered case can be found adverse to it. There are very many in strict accord with it. (See Mott v. Pennsylvania, R. R. Co., 30 Penn. St. R., 9; Darby v. Wright, Comptroller, etc., 3 Blatch. C. C. R., 170; Attorney-General v. Compton, 1 Y. & C., 417; New London v. Brainard, 22 Conn., 553 ; Bigelow v. Hartford Bridge Co., 14 id., 565; Attorney-General v. Liverpool, 1 M & C., 171.)
A court of equity exercises its peculiar jurisdiction over public officers to control their action only to prevent a breach of trust affecting public franchises, or some illegal act under color or claim of right affecting injuriously the property rights of individuals. A court of equity has, as such, no supervisory power or jurisdiction over public officials or public bodies, and only takes cognizance of actions against or concerning them when a case is made coming within one of the acknowledged heads of equity jurisdiction. To entitle a plaintiff to prohibition, by injunction from a court of equity, *395 either provisional or perpetual, he must not only show a clear legal and equitable right to the relief demanded, or to some part of it, and to which the in junction is essential, but also that some act is being done by the defendant, or is threatened and imminent, which will be destructive of such right, or cause material injury to him. A state of things from which the plaintiff apprehends injurious consequences to himself, but which neither actually exists nor is threatened by the defendants, nor is inevitable, is not a sufficient ground for an injunction. (Bigelow v. Hartford Bridge Company, supra.) The court in that case say: “ It is obviously not fit that the power of the court should be invoked in this form for every theoretical or speculative violation of one’s rights.” A perpetual injunction will only be decreed when at the hearing a case is established which, within the well established rules of a court of equity, entitle the party to that form of relief. (Eden on Injunctions, p. 253.)
When the State as plaintiff invokes the aid of a court of equity, it is not exempt from the rules applicable to ordinary suitors; that is, it must establish a case of equitable cognizance, and a right to the particular relief demanded.
This action is brought in the name of the people by their attorney-general, under the general powers confided to that officer to prosecute and defend all actions, in the event of which the people of the State are interested (1 R. S., 179, § 1), for a perpetual injunction to restrain the canal board from acting or proceeding under chapter 740 of the Laws of 1872, upon the ground that the act is unconstitutional and void. If the suggestion that the act is violative of the Constitution is well founded, the act is void, and proceedings under it would be without authority; and if the attorney-general has made a case from which it appears that the performance by the canal board of the duties devolved upon that body by the act will be a breach of trust, and operate as a waste or illegal application and payment of the public moneys, and that the canal board are proceeding in the performance of those duties, or threaten or intend to do *396 so, and unless restrained they will do so, it may be conceded for all the purposes of this appeal, but without deciding that the relief demanded should be granted. If such a case has not been established the complaint should be dismissed. A necessity must exist and be shown to exist for the action of the court before it will interfere by granting the prohibitory relief. It is not enough that the canal board is a public body composed of State officers,' charged with important duties affecting the public, and that they may act in hostility to the public interests under a void law, or that the attorney-general is apprehensive they may so act; if it is not made to appear that they are acting or threatening to act, that is, if a state of facts does not actually exist which calls for relief by injunction, it will not be granted.
The case, as well that made by the complaint, as that made upon the . trial and upon the facts found by the court of Special Term, is defective in almost every essential particular.
1. The attorney-general, to bring the case within the established rules of equity, alleges in the complaint that the canal board threaten and intend to act forthwith under said law and to do the things there required of them, and in this respect the complaint is not defective. But the canal hoard, answering with the other defendants, deny this allegation, a fact overlooked hy the accurate and able judge by whom this action was tried. He found the fact as alleged in the complaint, inadvertently supposing it to have been admitted by a failure to answer. He evidently regarded the fact as material, and one to be established by the plaintiffs, and without which they could not recover.
The evidence upon the trial, so far from proving the allegation of the complaint, substantially disproves it. The ■proof is that the action was commenced before any proceeding was had or taken by any one under the act. The complaint was verified on the 2d day of Hovembef, 1872, and the admission upon the trial was that on the seventh day of the same month the contractor presented to the canal board his petition asking that body to take action *397 under the law, and that upon the suggestion of the attorney-general, a member of the board, that this action was pending, and that it seemed best to him to wait for some decision in the action, all action was suspended and the matter laid upon the table. So far as appears, there was no unwillingness on the part of any member of the board to adopt and act upon any advice or opinion the law officer of the State should give as to the validity of the law; certainly there was nothing evidencing an intent to proceed under the law, and act against his remonstrance or advice, and no declaration or threat of such action. The material fact, then, was not proved, and the fact found by the learned judge, upon a supposed admission upon the record, is entirely without evidence to support it. If that allegation is stricken out of the complaint, as it must be for all the purposes of this appeal, it is merely a statement in substance that the legislature have enacted a law which, in the opinion of the attorney-general, is obnoxious to some of the provisions of the State Constitution, and under color of which he is apprehensive that a public body, of which he is a member, may at some time proceed and take action in a manner prejudicial to the interests of the State. The courts cannot be called upon to pass upon the validity of a law, upon the mere suggestion that it is void, and that possible action may be had under it, and in advance of any proceedings had or threatened by the officials, who, if the law were valid, would be called upon or authorized to act. The appeal presents simply in this view a theoretical or speculative question, which, whatever its merits, can only be judicially decided when facts arise giving the court jurisdiction, and making a decision necessary, and giving it practical effect when made.
2. Injury, material and actual, not fanciful or theoretical, or merely possible, must be shown as the necessary or probable results of the action sought to be restrained. The allegation of the complaint is that the doing the said acts by the defendants “ will produce injury to the plaintiffs and tend to render the judgment herein ineffectualand the court at *398 Special Term found the fact in the words of the complaint, without proof other than that furnished by the terms of the law itself.
The relief demanded is that the act be declared unconstitutional and void and all proceedings under it be perpetually enjoined. In other words, a perpetual injunction is the relief demanded. In what way or to what extent the people of the State could or would be injured, what trusts would be violated, what funds or moneys wrongfully appropriated by the action of the canal board, is not stated. The averment was a conclusion of the pleader from some facts not stated in the complaint, and which should have been stated unless' some injury to the public property or franchises would necessarily result from a proceeding by the canal board. That no injury necessarily results from the action of the canal board is very evident; and it is equally apparent that no injury can possibly result to the State from the action of that body alone, without the concurrence of other facts not averred or proved, and without the action of other officials who it cannot be assumed will do any act affecting the funds of the State, except as authorized by a law constitutionally valid.
1. The canal board are merely to ascertain whether the actual cost of certain work exceeded the price paid for it, and if so determine the amount and allow the actual cost thereof. Their duty ends with certifying the results of the examination and inquiry; and whatever may be the results, the determination does not necessarily affect the treasury or the public funds. They cannot by their act direct or procure the payment of any money. They are in no sense the custodian of the public funds or trustees of the public moneys or credit. Before any harm can come to the treasury or injury to the people, the canal commissioner must make his draft upon the auditor of the canal department for any amount the canal board shall allow the contractor, and the latter official must draw his warrant upon the treasurer, who must pay the same; and it is by the last act only that the treasury can be depleted under color of this law. It cannot be presumed,. *399 in support of the plaintiffs’ claim to relief, that the three officers, each acting independently of the other, whose acts must combine to effect the payment of any money under the act, will assume to act without authority of law, or in obedience to a law void and as no law.
2. If the canal board, upon investigation and inquiry under the act, should determine that the actual cost of the work did not exceed the prices paid and allowed, no harm- could come to the State. It is not averred that the cost did exceed the prices paid or that the canal board threaten and intend to certify and allow any sum whatever to the contractor, as the difference between the actual cost, and the prices paid for the work, or that such allowance is even possible or is apprehended by the attorney-general.
Ho court can assume, in aid of the averment of injury, that any of these facts exist, or that any result adverse to the State will follow the doing by the canal board of the acts required of them by the act.
3. Ho moneys can be drawn from the treasury except in pursuance of an appropriation by law; and every act making an appropriation must distinctly specify the sum appropriated and the object to which it is to be applied. (Const., articles 7 and 8.) The act under consideration makes no appropriation of moneys; and it is nowhere averred or shown that there is any appropriation of moneys applicable to the payment of any amount which maybe certified and allowed by the canal board. We cannot assume, and the court below could not assume, that there was such an appropriation. Future appropriations are in the discretion of the legislature ; but it cannot be presumed that they will appropriate public moneys in violation of the Constitution; and should they do so the appropriation would be void. Courts will not and cannot restrain the legislature either directly or indirectly, and an injunction based upon the assumption that the legislature may, by an appropriation of the public moneys, give effect to an unauthorized or illegal act of a public body is without precedent, and would be absurd.
*400 The act of the contractor in presenting the petition for an examination and inquiry by the canal board, does not give color to the action; it is of no significance or importance, as no rights accrue or consequences flow from it; and courts will not restrain and prohibit a citizen from petitioning the legislature, or any public body, or asking action by either in his behalf, whether with or without the authority of law, unless to do so would be a violation of some covenant or agreement with others. (Stockton & Hartlepool Railway Co. v. Leeds, etc., Railway Co., 2 Phillips, 666.)
Having come to the conclusion that the attorney-general has not made a case for the relief demanded, or for any relief—assuming that he is correct in his claim that the law is unconstitutional—it is unnecessary to examine the objections alleged against the act; although it is believed that the law is valid within the principles of People v. Dayton, now decided, and the reasoning of Judge Andrews in the prevailing opinion in that case.
The order of the General Term granting a new trial must be affirmed, and judgment absolute for the defendants, pursuant to the stipulation of the attorney-general.
All concur. Grover, J., in result.
Order affirmed, and judgment accordingly.